## BRIGGS EXCURSION CO. *v.* FLEMING.

*(Circuit Court, D. New Jersey.* November 25, 1889.)

ADMIRALTY—WRONGFUL ATTACHMENT.

A libelant who procures the seizure and detention of vessels for the purpose of enforcing an alleged lien against them, without an order of court, when, on the facts stated in his libel, he has no lien, is liable in damages to the owners, even though he acted in good faith, as an attachment issues as of course in such cases on the filing of the libel, and a special order of court is not required.

At Law. On demurrer to replication.

Trespass by the Briggs Excursion Company against Walter M. A. Fleming, for alleged wrongful seizure and detention of plaintiff's property. On August 12, 1886, the defendant filed a libel *in rem*, in the United States district court for the district of New Jersey, against the steamer General Sedgwick and the barge Republic, in a cause of damage, civil and maritime, for the breach of an executory contract in the nature of a charter-party. On the same day process of attachment and monition was issued to the marshal, by virtue of which, on the following day, that officer seized and took in custody the vessels named, being the property of the Briggs Excursion Company, the plaintiff in this action, and held them until released on bond. The allegations of the libel were, in substance, that the vessels were owned by the plaintiff corporation, and that the plaintiff and defendant had entered into a contract, which is recited at length in the libel, to the effect that the Briggs Excursion Company had agreed to charter the two vessels to the defendant for a day's excursion; that when the day arrived for the fulfillment of the contract the vessels were not ready, and the defendant was compelled to hire other boats, and was put to great loss and damage, amounting, in all, to $1,282. On the return of the writ the plaintiff appeared, by its proctor, in the district court, only to make exceptions to the libel, and object to the jurisdiction of the court, and after a hearing the libel was dismissed for want of jurisdiction. See *The General Sedgwick*, 29 Fed. Rep. 606. The plaintiff thereupon brought this action for an illegal seizure. The defendant has filed two pleas to the declaration: (1) The general issue; (2) justification, in that the writ was issued by the order of the district court. To the first plea there is a joinder; to the second plea there is a replication that the writ was illegal and void, for the reason that the court had no jurisdiction of the matters alleged in the libel. Demurrer to replication, and joinder.

Mark Ash, for the plaintiff, cited 1 Wat. Tresp. 391; Id. 510; *Kerr* v. *Mount*, 28 N. Y. 659; *Chapman* v. *Dyett*, 11 Wend. 31; *Smith* v. *Shaw*, 12 Johns. 257; *Hayden* v. *Shed*, 11 Mass. 500; *Codrington* v. *Lloyd*, 8 Adol. & El. 449; *Parsons* v. *Lloyd*, 2 W. Bl. 845; *Wehle* v. *Butler*, 61 N. Y. 245; *Miller* v. *Adams*, 52 N. Y. 409.

Robt. H. McCarter, for defendants, cited Hen. Adm. 337; *The Adolph*, 5 Fed. Rep. 114; *Thompson* v. *Lyle*, 3 Watts. & S. 166; *The Evangelismos*, 12 Moore, P. C. 352; *The Cathcart*, L. R. 1 Adm. & Ecc. 314; *The Kate*,

10 Jur. (N. S.) 444; *Turnbull* v. *Strathnaver*, L. R. 1 App. Cas. 58; 2 Add. Torts, § 856; *Leigh* v. *Webb*, 3 Esp. 165; *Wyatt* v. *White*, 5 Hurl. & N. 371; *Grove* v. *Van Duyn*, 44 N. J. Law, 661.

WALES, J.   The question raised by the demurrer is whether a libelant who procures the seizure and detention of vessels for the purpose of enforcing the payment of an alleged lien against them, when, on the facts stated by him in his libel he had no lien, is liable to respond in damages to the owners of the property as for a trespass.   The positions taken in support of the demurrer depend on the theory that the process of attachment was issued by the special order of the district court, which had a general jurisdiction of the subject-matter of the libel, although in this instance the court may have acted in excess of that jurisdiction. It is conceded that the writ was improperly issued, but, at the same time, the defendant claims that this was the error of the court, and not his own.   The record of the district court, and the practice of the admiralty courts in this circuit, do not sustain the defendant in this contention.   That practice and the admiralty rules do not require a special order of the court for the issuing of writs of attachment on libels *in rem.* The ordinary practice is for the libelant to file his libel with the clerk of the court, with a stipulation for costs, and the writ is issued by that officer, in most cases, as a matter of course.   Ben. Adm. § 415.   But in libels *in personam* no warrant for the arrest of the person or property of a defendant will be issued for a sum exceeding $500, unless by the special order of the court, upon affidavit or other proper proof showing the propriety thereof.   Adm. Rule 7.   Such writs have been issued out of the district courts in this circuit, in the manner and according to the practice just stated, for many years past; and any person who conceived that he had a maritime lien or claim could obtain a writ by filing his libel *in rem* or *in personam*, as the particular circumstances of his case required.   If the proceeding was *in rem*, the writ would be issued by the clerk of the court in whose office the libel had been filed, without a special order of the judge or of the court; but, if the proceeding was *in personam* for the arrest of the defendant or his property, the allowance of the writ by the court would be requisite.   It is not true, therefore, that the attachment of the plaintiff's vessels was ordered or directed by the court.   In point of fact, the attention of the court was for the first time drawn to the case when the exceptions to the libel were heard, and when it was admitted by the defendant that he had mistaken the form of his remedy.   Analogies drawn from criminal proceedings are not applicable.   A person making an affidavit before a magistrate, who thereupon issues a warrant of arrest for a felony, when the facts sworn to do not constitute a felonious offense, will not, in the absence of collusion or malice, be liable to the party arrested for false imprisonment. But this does not resemble a proceeding in which a libelant obtains a writ on his own application, without the consent or knowledge of the court.   In the latter case, the party acts on his own responsibility; in the former, the magistrate exercises his official judgment, and his error will not be imputed to the party who makes the complaint.

It is also insisted by the defendant that the declaration does not charge him with bad faith or malicious motives in attaching the vessels, and that so long as he acted in good faith, and without evil intent, he cannot be held liable for the erroneous order of the court. But this proposition, like the others, assumes what is not true, namely, that the attachment was ordered by the court. If the defendant was honestly mistaken in adopting the course he did, it may affect the quantum of damages, but does not justify the wrong done to the plaintiffs. A void writ taints with illegality all that may be done under it. In *O'Brien* v. *Roosevelt* the plaintiff was indebted to the defendants in the sum of $400 for repairs to the plaintiff's vessel. The defendants caused the vessel to be libeled and seized by process issuing out of the United States district court. The libel was subsequently dismissed for want of jurisdiction, on the ground that the repairs had been made in the home port of the vessel. On an action brought for damages in the court below, the jury found for the plaintiff, and the verdict was sustained. In *The Margaret Jane*, L. R. 2 Adm. & Ecc. 345, the suit was brought to recover £2,500 for salvage service rendered to the arrested vessel and cargo, the value of which had been reported by the receiver of wreck to be £746. By a provision of the merchant shipping act (25 & 26 Vict. c. 63, § 49) the court had no jurisdiction of salvage causes in which the value of the property saved was under £1,000. The plaintiffs eventually abandoned their suit, and, on motion to condemn the plaintiffs in costs and damages, the court decided that, "although the services of the plaintiffs are of considerable merit, yet as the vessel had been detained after they knew, or had the means of knowing, that the report of the receiver was substantially correct, the motion should be granted." In *The Cathcart* plaintiffs in admiralty were condemned in damages, on the ground that, with adequate knowledge of the circumstances, they had arrested the ship when no money was due to them. The court there said "the plaintiffs had full knowledge of the facts, and must be held to the legal effect of their own engagements. If they had regarded the terms of those engagements, they would have known they had no right to arrest the vessel." These authorities exhibit the legal consequences of improperly causing the arrest of vessels by admiralty process. *The Evangelismos* is an exceptional case, and the reasoning of the court on the facts is not above criticism. Besides, that case is not directly applicable, as there was a disputed fact before the court, but here the facts were ascertained and known before the attachment was issued. To enforce the payment of liens and the recovery of maritime claims, in admiralty, it is often necessary to use summary means, and the fact that proceedings *in rem* require the attachment of property should make suitors cautious in causing the arrest and detention of vessels which are actively engaged in business, and especially in a case like the present one, where the defendant, by the exercise of a little forethought, might have known that he had no right to seize and hold the property of the plaintiff. The demurrer is overruled.